UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| **ISHRAK TRADING, INC.,** | : |
| **Plaintiff,** | : |
|  | :   Case No. |
| v. | : |
| **UNITED STATES OF AMERICA,** | : |
| **Defendant.** | : |
|  | : |

# COMPLAINT

Plaintiff Ishrak Trading, Inc. ("Sam's Food" or "Store"), by and through undersigned counsel, pursuant to 7 U.S.C. § 2023 and 7 C.F.R. § 279.7, hereby files this Complaint against Defendant United States of America, and alleges:

1. This action seeks judicial review of the Final Agency Decision ("FAD"), dated December 8, 2025, of the United States Department of Agriculture's ("USDA") Food and Nutrition Service ("FNS") permanently disqualifying Sam's Food, the retail food store owned by Plaintiff from participation as an authorized retailer in the Supplemental Nutrition Assistance Program ("SNAP").

## PARTIES

2. Plaintiff Ishrak Trading, Inc. is a Florida corporation headquartered in Palm Beach County.

3. Plaintiff is the owner of Sam's Food, a supermarket located at 2924 Avenue S, Riviera Beach, Florida 33404-3539.

4. Sam's Food is a "retail food store" as such term is defined by FNS in its SNAP regulations at 7 C.F.R. § 271.2.

5. Defendant United States of America is the federal government.

6. FNS is an agency of the United States Department of Agriculture ("USDA"). USDA is an executive branch department of the federal government.

7. FNS administers and has promulgated regulations governing SNAP pursuant to powers delegated by Congress in Section 4 of the Food and Nutrition Act of 2008. 7 U.S.C. § 2013.

8. Formerly known as the food stamp program, SNAP provides supplemental nutrition benefits to more than 42 million Americans and nearly three million residents of Florida. SNAP's fundamental purpose is to provide eligible low-income households with increased food purchasing power. 7 U.S.C. § 2011.

9. Pursuant to SNAP regulations set forth in 7 C.F.R. Part 278, FNS has authority to authorize and disqualify retail food stores from participation in SNAP.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 7 U.S.C. § 2023, 7 C.F.R. § 279.7, and 28 U.S.C. §§ 1331, 1346.

11. Venue in this district is proper under 7 U.S.C. § 2023 and 28 U.S.C. §§ 1391(b) and (e) because the retail food store that is the subject of this action is located in Florida in this judicial district and because the United States of America is deemed a resident of this judicial district and has consented to suit in this judicial district.

12. Sam's Food has exhausted any and all administrative remedies required prior to the institution of this action.

## FACTUAL ALLEGATIONS

13. Sam's Food is a well-stocked convenience store located in an impoverished neighborhood in Riviera Beach.

14. At all times relevant hereto, Sam's Food carried hundreds of different SNAP-eligible food items.

15. At all times relevant hereto through August 25, 2025, Sam's Food was a "retail food store" authorized by FNS to redeem SNAP benefits. Sam's Food's FNS-issued SNAP authorization number was #0821336.

16. On June 4, 2025, FNS's Retailer Operations Division ("ROD") charged Sam's Food with trafficking in violation of FNS's SNAP regulations ("Charge Letter").

17. The Charge Letter detailed five transactions committed by an unidentified Store clerk between March 12 and April 25, 2025, that FNS contended constituted trafficking in SNAP benefits in violation of FNS's SNAP regulations.

18. In each of the five alleged trafficking violations, the Charge Letter asserted that a clerk identified only as "K" allegedly purchased an undercover USDA investigator's EBT card for cash and either used such EBT card at Sam's Club and other retailers, or allegedly purchased items paid for by the undercover investigator at another retailer with SNAP benefits

19. On July 8, 2025, Sam's Food submitted its written response to the Charge Letter. In its response, *inter alia,* Sam's Food denied that the Store engaged in trafficking in SNAP benefits and requested that FNS impose a civil money penalty ("CMP") in lieu of permanent disqualification.

20. On August 25, 2025, FNS issued its initial determination permanently disqualifying Sam's Food from participation in SNAP as an authorized retailer ("Initial Determination").

21. The Initial Determination contained no substantive discussion or analysis whatsoever. Instead, the Initial Determination summarily concluded that "the violations cited in the charge letter occurred at your store." Additionally, the Initial Determination

letter stated, without explanation, that the Store was "not eligible for a CMP because you failed to submit sufficient evidence to demonstrate that your firm had established and implemented an effective compliance policy and program to prevent violations of the Supplemental Nutrition Assistance Program."

22. On August 27, 2025, Sam's Food timely requested administrative review of the Initial Determination, pursuant to 7 C.F.R. §279.1 *et seq.*, to FNS's Administrative and Judicial Review Branch ("AJRB").

23. In its response in support of administrative review, Sam's Food again requested a CMP and submitted proof that the Store met the criteria set forth in FNS's SNAP regulations. 7 C.F.R. §278.6(i).

24. On December 8, 2025, FNS Administrative Review Officer Mary Kate Karagiorgos ("ARO Karagiorgos") issued the FAD. A copy of the FAD is attached hereto as Exhibit A.

25. The FAD affirmed the permanent disqualification of the Store from SNAP for trafficking.

26. The FAD held that "[t]he documentation presented by the Office of Retailer Operations and Compliance establishes by a preponderance of the evidence that the violation described in Exhibits B, C, D, and E of the investigative report meets the definition of trafficking. as charged." FAD, at 5.

27. In the FAD, FNS rejected all of Sam's Food's arguments, notwithstanding the evidence submitted by the Store.

28. FNS's FAD relied upon records and other information in FNS's possession.

29. The records and other information relied upon by ARO Karagiorgos in issuing the FAD were never provided to Sam's Food.

30. FNS's FAD was based on numerous incorrect factual and legal determinations, including (but not limited to) relating to the visits by the undercover USDA investigator, the burden of proof, and numerous credibility determinations.

31. Upon information and belief, at no time did any FNS Program Specialist, including Kenneth Simpson, the FNS program specialist who issued the Charge Letter, ever visit the Store or discuss the allegations set forth in the Charge Letter with Store personnel.

32. Upon information and belief, at no time did any FNS Program Specialist, including Kenneth Simpson, the FNS program specialist who issued the Charge Letter, ever discuss the allegations set forth in the Charge Letter with the undercover USDA investigator.

33. Upon information and belief, at no time did any FNS Section Chief, including Julia McClure, the FNS section chief who signed the Charge Letter, visit the Store or discuss the allegations set forth in the Charge Letter with Store personnel.

34. Upon information and belief, at no time did any FNS Section Chief, including Julia McClure, the FNS section chief who signed the Charge Letter, ever discuss the allegations set forth in the Charge Letter with the undercover USDA investigator.

35. Upon information and belief, at no time did ARO Karagiorgos, who issued the FAD, ever visit the Store or discuss the allegations set forth in the Charge Letter with Store personnel.

36. Upon information and belief, at no time did ARO Karagiorgos ever discuss the allegations set forth in the Charge Letter with the undercover USDA investigator.

37. The FAD was based upon records other than USDA's Report of Positive Investigation that were never produced to the Store or undersigned counsel.

38. The FAD ignored the evidence submitted by the Store in its response in support of its Request for Administrative Review.

39. The FAD is FNS's final administrative determination that its permanent disqualification of Sam's Food from participation as an authorized SNAP retailer was properly imposed.

40. The FAD is FNS's final administrative determination that Sam's Food was not eligible for a CMP.

41. No Store funds were ever used during any of the alleged trafficking transactions referenced in the Charge Letter.

42. No one with authority to bind the Store ever interacted with the undercover USDA investigator.

43. Any actions taken by a Store clerk, as set forth in the transactions referenced in Charge Letter, were outside of the scope of their employment with Sam's Food.

44. Any actions taken by a Store clerk, as set forth in the transactions referenced in Charge Letter, were not authorized by Sam's Food.

45. Any actions taken by a Store clerk, as set forth in the transactions referenced in Charge Letter, were outside of the scope of the duties of a Sam's Food clerk.

46. Any actions taken by a Store clerk, as set forth in the transactions referenced in Charge Letter, were inconsistent with and violated Store policies.

47. Trafficking is defined in 7 C.F.R. §271.2.

48. The Charge Letter did not articulate which of the six sub-sections of 7 C.F.R. § 271.2 the Store allegedly violated.

49. The penalty for trafficking is the _permanent_ disqualification of the Store from participating in SNAP. 7 C.F.R. § 278.6(e)(1).

50. Congress, in enacting the Food & Nutrition Act of 2008, intended FNS to make CMPs reasonably available to SNAP retailers.

51. FNS promulgated criteria for CMP eligibility that are unreasonable, inconsistent with the Food & Nutrition Act of 2008, and in excess of authority delegated to it by Congress and/or the Secretary of the U.S. Department of Agriculture.

52. FNS granted only six (6) CMPs in lieu of permanent disqualification for trafficking during fiscal year 2024. At the same time, it permanently disqualified 733 small retailers (and only one supermarket and zero superstores) from SNAP for trafficking.

53. Upon information and belief, during administrative proceedings, FNS relied upon records not provided to Sam's Food and issued its Final Agency Decision to permanently disqualify the Store from SNAP based on records never produced to the Plaintiff.

54. All information reviewed and relied upon by FNS during administrative proceedings will be produced as the Administrative Record or during discovery in this judicial review proceeding.

55. FNS, in the FAD, ignored well-founded explanations that Sam's Food did not engage in trafficking.

56. FNS, in the FAD, ignored the evidence submitted by Sam's Food that entitled it to a CMP in lieu of permanent disqualification for trafficking.

57. Sam's Food was not afforded the opportunity to evaluate and respond to all the evidence in FNS's possession during administrative proceedings, including all of the evidence reviewed and/or relied upon by FNS in making its Final Agency Decision.

58. Requiring retailers to await judicial review proceedings before they are permitted to review all the evidence in FNS's possession and relied upon by Administrative Review Officers and other FNS officials is arbitrary and capricious.

59. FNS's SNAP retailer administrative process is Kafka-esque and more similar to a Star Chamber than an equitable federal administrative process.

60. Federal administrative proceedings that concern the revocation of a license or permit issued by a federal agency must satisfy due process and other constitutional requirements.

61. FNS is not a law enforcement agency.

62. FNS investigators are not authorized by federal law to carry firearms or other weapons when conducting investigations of SNAP retailers.

63. No statute or regulation prohibits FNS from providing Sam's Food with the entire administrative record during administrative review proceedings.

64. By failing to provide Sam's Food with all information available to it, FNS did not provide Sam's Food with a meaningful opportunity to respond to the allegations in the Charge Letter in a manner consistent with the Due Process clause of the U.S. Constitution.

65. By failing to provide Sam's Food with all information available to it, FNS did not provide Sam's Food with a meaningful opportunity to participate during administrative review proceedings in a manner consistent with the Due Process clause of the U.S. Constitution.

## COUNT I – *DE NOVO* REVIEW OF FINAL AGENCY ACTION PURSUANT TO 7 U.S.C. § 2023 AND 7 C.F.R § 279.7

66. Plaintiff repeats and re-alleges paragraphs 1 through 65 as if fully set forth herein.

67. At no time did Sam's Food engage in trafficking in SNAP benefits.

68. At no time did Sam's Food exchange SNAP benefits for cash.

69. The undercover USDA investigator was not a SNAP beneficiary.

70. The EBT card used by the undercover USDA investigator was not a validly issued EBT card.

71. The exchange of SNAP benefits for cash by a Store clerk is outside of the scope of his employment.

72. The exchange of SNAP benefits for cash by a Store clerk acting outside of the scope of his employment is not trafficking in SNAP benefits.

73. A SNAP-authorized retail food store is not responsible for all acts and omissions by store clerks.

74. FNS did not and does not have statutory authority to permanently disqualify a SNAP-authorized retail food store based on acts and omissions by store clerks outside of the scope of their employment.

75. FNS did not and does not have regulatory authority to permanently disqualify a SNAP-authorized retail food store based on acts and omissions by store clerks outside of the scope of their employment.

76. The exchange of SNAP benefits for cash by a Store clerk acting outside of the scope of his employment is not trafficking in SNAP benefits.

77. The Food and Nutrition Act of 2008 does not impose strict liability upon a SNAP-authorized retail food store for all and omissions by store employees.

78. FNS's SNAP regulations do not impose strict liability upon a SNAP-authorized retail food store for all acts and omissions by store employees.

79. The Food and Nutrition Act of 2008 does not impose strict liability upon a SNAP-authorized retail food store for acts by store employees acting outside the scope of their employment.

80. FNS's SNAP regulations do not impose strict liability upon a SNAP-authorized retail food store for acts by a store employee acting outside the scope of their employment.

81. A preponderance of the evidence before ARB during administrative review proceedings established that Sam's Food did not engage in trafficking in SNAP benefits.

82. In the FAD, FNS incorrectly determined that a preponderance of the evidence demonstrated that Sam's Food engaged in trafficking, in violation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

83. The permanent disqualification of Sam's Food from participating in SNAP should be reversed because FNS failed to consider all evidence submitted by the Store.

84. The permanent disqualification of Sam's Food from participating in SNAP should be reversed because FNS waited for nearly three months after the first alleged trafficking transaction took place before issuing the Charge Letter.

85. The permanent disqualification of Sam's Food from participating in SNAP should be reversed because FNS did not interview anyone affiliated with the Store.

86. The permanent disqualification of Sam's Food from participating in SNAP should be reversed because FNS did not interview the undercover investigator or take other action to confirm the veracity of the Report of Positive Investigation.

87. The FAD should be reversed because the permanent disqualification of Sam's Food from participating in SNAP is unreasonable and excessive in light of the circumstances.

88. The FAD should be reversed because Sam's Food submitted substantial evidence supporting a CMP in lieu of permanent disqualification for trafficking in SNAP benefits.

89. FNS's acts and omissions during administrative proceedings were unreasonable, inequitable, in excess of the authority granted to it by Congress, and arbitrary and capricious.

90. FNS's acts and omissions during administrative proceedings violated and were not consistent with the requirements of the Due Process clause of the U.S. Constitution.

91. Permanent disqualification of Sam's Food from participating in SNAP is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

92. Permanent disqualification of Sam's Food from participating in SNAP represents agency action beyond the scope of authority granted by Congress to FNS when it delegated power to FNS to promulgate and enforce reasonable regulations in the Food and Nutrition Act of 2008.

93. FNS's permanent disqualification of Sam's Food from participating in SNAP based upon circumstantial evidence represents agency action beyond the scope of authority granted by Congress to FNS when it delegated the power to promulgate and enforce reasonable regulations pursuant to the Food and Nutrition Act of 2008.

94. FNS's permanent disqualification of Sam's Food from participating in SNAP based on the Charge Letter is inconsistent with a disqualification for a "reasonable period of time."

95. FNS's determination that it was without authority to consider a penalty other than permanent disqualification of Sam's Food from participating in SNAP is invalid and erroneous.

96. FNS's denial of Sam's Food request for a CMP in lieu of permanent disqualification for trafficking was arbitrary, capricious, invalid, and erroneous.

97. The Initial Determination and the FAD were based on an arbitrary and capricious interpretation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

98. In the FAD, FNS acted arbitrarily and capriciously in concluding that Sam's Food engaged in trafficking in violation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

99. In the FAD, FNS acted arbitrarily and capriciously in denying Sam's Food's request for a CMP in lieu of permanent disqualification for trafficking.

100. FNS's permanent disqualification of Sam's Food is premised upon an erroneous, unsupportable, and arbitrary and capricious interpretation of 7 C.F.R. § 278.6.

101. In issuing the FAD, FNS acted arbitrarily and capriciously by failing to consider all information submitted by or related to Sam's Food and its SNAP authorization.

102. Pursuant to 7 U.S.C. § 2023 and 7 C.F.R. § 279.7, this Court should conduct a *de novo* review of FNS's FAD which permanently disqualified Sam's Food from participating in the SNAP and denied its request for a CMP.

WHEREFORE, Plaintiff Sam's Food respectfully requests that this Court, after conducting a *de novo* review of the FAD, enter judgment in its favor and against the United States, and issue an Order granting the following relief:

(a) Reversing the FAD;

(b) Rescinding the Initial Determination;

(c) Preliminarily and permanently enjoining FNS from denying Sam's Food authorization to participate in SNAP based upon the Initial Determination, the FAD, or the alleged violations in the Charge Letter;

(d) Directing FNS to immediately restore Sam's Food's SNAP authorization and without requiring it to submit additional information or a new application;

(e) Directing FNS, in the alternative, to impose a CMP in lieu of permanent disqualification of the Store for trafficking;

(f) Restoring Sam's Food's SNAP authorization;

(g) Awarding Sam's Food an amount equal to its reasonable attorneys' fees and costs; and

(h) Such other and further relief as the Court may deem just and proper.

Respectfully submitted this 24th day of December, 2025.

By: /s/ Stewart D. Fried
Stewart D. Fried, Esq.
Florida Bar # 057584
Olsson Frank Weeda Terman Matz PC
2000 Pennsylvania Avenue, N.W., Suite 4003
Washington, DC 20006
Telephone: 202.518.6326
Facsimile: 202.234.3550
sfried@ofwlaw.com

*Attorneys for Plaintiff Ishrak Trading, Inc.*